IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff-Respondent, § | |
| § | |
| V. § | CRIMINAL ACTION NO. H-05-441-1 |
| § | CIVIL ACTION NO. H-07-213 |
| OMAR ANTONIO JIMENEZ-MORENO, § | |
| § | |
| Defendant-Movant § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Omar Antonio Jimenez-Moreno's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 69),[1] and the United States' Answer and Motion to Dismiss (Document No. 71). After reviewing Movant's § 2255 Motion, the Government's Answer and Motion to Dismiss, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Government's Motion to Dismiss (Document No. 71) be GRANTED, that Movant's Motion to Vacate, Set Aside, or Correct Sentence (Document No. 69) be DENIED, and that this § 2255 proceeding be DISMISSED.

---

[1] Omar Antonio Jimenez-Moreno's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-07-213 and at Document No. 69 in Criminal Action No. H-05-441. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

I.    **Procedural History**

Movant Omar Antonio Jimenez-Moreno ("Jimenez-Moreno"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Jimenez-Moreno's first attempt at § 2255 relief.

On November 21, 2005, Jimenez-Moreno and Jorge Antonio Correa-Montanes were charged by Indictment with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A)(ii) (Count one), and aiding and abetting possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(ii) and 18 U.S.C. § 2 (Count two). (Document No. 11). On January 27, 2006, Jimenez-Moreno, pursuant to a written plea agreement, pleaded guilty to Count two. (Document Nos. 29, 32). Under the written plea agreement, Jimenez-Moreno agreed to plead guilty to Count 2, and the Government agreed to dismiss Count 1. Jimenez-Moreno also waived his right to appeal, except under limited circumstances, and waived his right to collaterally attack his conviction and/or sentence. The written plea agreement provides in pertinent part:

> 9. Defendant is aware that Title 18, United States Code, § 3742 affords a defendant the right to appeal the sentence imposed. The defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined **on any grounds set forth in Title 18, U.S.C. § 3742**. Additionally, the defendant is aware that Title 28, United States Code, § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his conviction or sentence by means of any post conviction proceeding, **including, but not limited to Title 28, United States Code, §§ 1651, 2241, and 2255.**
>
> 10. The defendant further waives any rights under Title 28 United States Code, § 2241 to challenge the manner in which the sentence is executed or the legality of the defendant's detention. In exchange for the Agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that

is not time barred on this date that this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

11. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. The Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction, not a promise, **did not induce his guilty plea**, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

\*                                                                            \*

15. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted with applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under the plea agreement.

\*                                                                            \*

17. Defendant is pleading guilty because he is guilty of the charges contained in Count 2 of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish the Defendant's guilt:

3

> On the morning of October 25, 2005, at approximately 11:00 a.m., a DEA confidential source (CS) made telephonic contact with JIMENEZ. This conversation was consensually recorded and monitored. During the conversation, JIMENEZ informed the CS that the transaction would take place at his business, JBC Beepers, located at 7051 ½ Monroe Road, Houston, Texas 77061. The CS told JIMENEZ that the CS would come to the business at approximately 2:00 p.m. to inspect the 11 kilograms and thereafter, would place a call to the buyer who would then bring the purchase money to the business. JIMENEZ and the CS agreed to pay Jorge Antonio Correa-Montanes $250 each to act as lookout during the transaction.
>
> At approximately 1:00 p.m., agents established surveillance of JBC Beepers. CORREA was seen outside the business, pacing back and forth in front of the business and looking up and down the street.
>
> At approximately 2:00 p.m., the CS, wearing an audio transmitter, arrived at JBC Beepers and met with JIMENEZ. Shortly after the CS arrived, JIMENEZ was seen leaving the business in a Mitsubishi Montero. JIMENEZ returned to the business at approximately 3:00 p.m. and was seen to remove a multi-colored box from the back of the Montero. Upon JIMENEZ entering the business with the box, CORREA exited the business and resumed his "lookout" activities.
>
> At approximately 3:15 p.m., S/A Teague received a phone call from the CS advising him that the 11 kilograms of cocaine were present in JBC Beepers. Agents surrounded and entered the business and detained JIMENEZ and Correa.
>
> JIMENEZ was advised of his constitutional rights and thereafter agreed to answer questions and to consent to a search of the business. The search of the business resulted in seizure of 10 kilograms of suspected cocaine from the multi-colored box which JIMENEZ had been carrying to the business as well as an 11th kilogram under the counter at the front of the business. A handgun was also recovered from a computer case located in the general proximity of the 10 kilograms. JIMENEZ admitted to possession of the 11 kilograms of suspected cocaine.
>
> Lab analysis revealed the substance seized from JBC Beepers to be cocaine with a net weight of 9.005 kilograms. (Document No. 32) (emphasis in original).

In addition, Jimenez-Moreno and his attorney, executed an addendum to the written Plea Agreement, which states in pertinent part:

> I have fully explained to defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines's Manual and Policy Statements and I have fully and carefully explained

4

> to Defendant the provisions of those Guidelines which may apply in this case.  I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction.  Further, I have carefully reviewed every part of this plea agreement with Defendant.  To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.
>
> I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me.  My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guideline's Manual</u> which may apply in this case.  I have read and carefully reviewed every part of this plea agreement with my attorney.  I understand this agreement and I voluntarily agree to its terms.  (Document No. 29).

At the January 27, 2006, Rearraignment, the Court engaged in an extended colloquy with Jimenez-Moreno to ensure that he had read the written Plea Agreement and had conferred with his attorney about the contents of the Plea Agreement.  The Court also advised Jimenez-Moreno of the consequences of his plea, including the sentence he faced, the manner in which his sentence would be calculated, and the waiver provisions:

> The Court:  Have you had a chance to have that written plea agreement translated for you from English into Spanish?
>
> The Defendant:  Yes.
>
> The Court:  And have you discussed it with Mr. Sillas, your attorney?
>
> The Defendant:  Yes, ma'am.
>
> The Court:  Do you feel that you understand what it is you're agreeing to in that written Plea Agreement?
>
> The Defendant:  Yes, ma'am.
>
> The Court:  And do you feel like you understand what it is the Government is agreeing to in that written Plea Agreement?
>
> The Defendant:  Yes, ma'am.

The Court:  All right.  Are there any other or different promises or assurances that were made to you that prompted you to enter a plea of guilty that did not get written down in the written plea agreement?

The Defendant:  No, ma'am.

The Court: All right.  So that written Plea Agreement contains all of the promises and understandings and agreements that you have with the Government that prompted you to enter a plea of guilty in this case; is that correct?

The Defendant:  Yes, ma'am.

The Court:  Do you understand that the terms of the written Plea Agreement will be binding upon you and upon the Government but they're not binding upon me?

The Defendant:  Yes, ma'am.

        *                *

The Court:  All right.  Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow to determine what the sentence will be in a criminal case.  Have you and Mr. Sillas talked about how those guidelines may apply in your case?

The Defendant:  Yes, ma'am.

The Court:  Do you understand that those guidelines are no longer mandatory but are advisory only?

The Defendant:  Yes, ma'am.

The Court:  Nevertheless, I am still obliged to consider those Sentencing Guidelines when I determine what your sentence is.  Do you understand that?

The Defendant:  Yes, ma'am.

The Court:  And because I have to consider the guidelines, I cannot tell you what your sentence will be today.  Do you understand that?

The Defendant:  Yes, ma'am.

6

The Court: I will order that a probation officer prepare– or investigate your case and then prepare a presentence report that will assist me in sentencing. Do you understand that?

The Defendant: Yes, ma'am.

The Court: And once that presentence report has been prepared, you and Mr. Sillas will get a copy of that report. Mr. Hanes will also get a copy. And each of you will be given an opportunity to make any objections to that report. Do you understand that?

The Defendant: Yes, ma'am.

The Court And we will then have a sentencing hearing. And at that hearing, I will rule on any objections that may be made to the presentence report. I will also rule on any motions that may be made, recommendations that may be made, or any other matters that may come to my attention that may have an impact on the sentence that you receive. Do you understand that?

The Defendant: Yes, ma'am.

The Court: And at the conclusion of that sentencing hearing, I will be then in a position to determine what your sentence is and I will pronounce sentence. Do you understand that that's how the process works?

The Defendant: No.

The Court: You don't understand that?

The Defendant: Oh, yes.

The Court: Okay. When I pronounce sentence, it could be that the sentence I give you is more severe than the one that you and Mr. Sillas may have estimated you might get when you were talking about how the guidelines might apply in your case? Do you understand that?

The Defendant: Yes, ma'am.

The Court: And if that should happen, if I give you a sentence that's more severe than the one you're expecting to get, you will not be given an opportunity to withdraw your plea of guilty. Do you understand that?

The Defendant: Yes, ma'am.

The Court:  All right.  Now, I must also point out to you that because of the nature of the crime that you are pleading guilty to, a concept known as "mandatory minimum" comes into play.  And by that is meant that the Congress of the United States has passed a law that in certain kinds of cases, which includes your kind of case, no matter what your guideline sentence might work out to be, I would still be obliged to give you a sentence of at least ten years in prison.  Do you understand that?  Yes?

The Defendant:  Yes.

      *           *

The Court:  But under the terms of the written Plea Agreement that you propose to enter into this morning, you will be waiving or giving up any rights you have to appeal any sentence that I impose or to make any habeas corpus challenge to any of the sentence that I impose.  Do you understand that?

The Defendant:  Yes, ma'am.

The Court:  And any right you have retained to appeal your sentence would be contained in that written Plea Agreement.  Do you understand that?

The Defendant:  (Nodding).

      *           *

The Court:  All right.  Mr. Hanes, tell me what it is the Government is prepared to prove if we went to trial in this case.

Mr. Hanes.  Yes, Your Honor.

Had this matter gone to trial, the United States would have proven beyond a reasonable doubt that on or about October the 25th of 2005, in the Southern District of Texas in the Houston Division, the defendant in this case, Omar Antonio Jimenez, was conducting a narcotics transaction with a DEA confidential source at a business called JBC Beepers, operated by the defendant and located at 7051-1/2 Monroe Road, Houston, Texas.

At approximately 3:15 p.m., the confidential source notified agents that the 11 kilograms of cocaine, which was the amount that the defendant had agreed to supply, was located inside of JBC Beepers.  Agents entered the business, placed defendant under arrest, advised him of his constitutional rights, and requested consent to search the business, which the defendant gave.

8

> The search of the business resulted in the seizure of 10 kilograms of suspected cocaine. The defendant later admitted to possessing the 11 kilograms of suspected cocaine. The cocaine was analyzed and found to contain – to actually be 9.005 kilograms of cocaine.
>
> The Court: Okay. Mr. Jimenez, tell me in your own words what it is you did to commit the crime that you're pleading guilty to this morning.
>
> The Defendant: What the Government attorney is saying.
>
> The Court: Is that – what he's saying is basically what is contained in your written plea agreement; is that correct?
>
> The Defendant: (Nodding). (Document No. 72, Transcript of Rearraignment Hearing, pp. 5-6, 9-13, 16-17).

Prior to sentencing, a pre-sentence investigation report ("PSR") was prepared to which Jimenez-Moreno filed written objections.[2] (Document Nos. 42, 43, 45). Pursuant to the PSR, Jimenez-Moreno's guideline sentencing range was calculated as follows: (1) Jimenez-Moreno had a base offense level of 32. (2) At the time of Jimenez-Moreno's arrest, DEA agents located a loaded weapon inside a computer case that was found near 11 kilograms of cocaine. Based on the proximity of the gun to the cocaine, pursuant to U.S.S.G. § 2D1.1(b)(1), two levels were added to his base offense level. (3) Because Jimenez-Moreno's role in the offense was that of an organizer/leader, pursuant to U.S.S.G. § 3B1.1(c), 2 levels were added to his base offense level. (4) Because Jimenez-

---

[2] Jimenez-Moreno objected to several sections of the PSR including Part A, the offense, items 5, 11, 12 and 14. He also objected to the section relating to the specific offense characteristic. According to Jimenez-Moreno, because it was "clearly improbable that the weapon was connected with the offense" he should not have been given a two point upward adjustment to his base offense level under U.S.S.G. § 2D1.1(b)(1). Jimenez-Moreno further objected to the two level upward adjustment to his base offense level under U.S.S.G. § 3B1.1(c), based on his role as a leader/manager. According to Jimenez-Moreno, the "el abogado" was the main organizer and his role was that of a conduit of information. Jimenez-Moreno also argued that he should be given a three level downward adjustment for acceptance of responsibility.

Moreno accepted responsibility and assisted the Government, and did so in a timely manner, under U.S.S.G. § 3E1.1(a)&(b), 3 levels were deducted from base offense level. (5) With an adjusted base offense level of 33, and with a criminal history of category 1, Jimenez-Moreno had a guideline sentence range of 135 to 168 months. Prior to sentencing, the Government filed a Motion for Downward Departure. On May 17, 2006, Judge Harmon granted the Government's Motion for Downward Departure, and Jimenez-Moreno was sentenced to a term of imprisonment of 87 months, to be followed by a 5 year term of supervised release, and a $100 special assessment. (Document No. 51, Transcript of Sentencing Hearing, Document No. 68).

Because Jimenez-Moreno did not appeal, his conviction became final ten days later, on or about June 12, 2006. The docket sheet reveals that Jimenez-Moreno filed his § 2255 motion (Document No. 69) on January 17, 2007. In his § 2255 motion, Jimenez-Moreno argues that his counsel was ineffective because he failed to waive deportation proceedings, which would have qualified Jimenez-Moreno for an additional four level reduction of his base offense level. The Government has answered and has moved to dismiss the instant action on the ground that Jimenez-Moreno, as part of his written Plea Agreement, waived the right to bring a motion under § 2255, and that his written Plea Agreement should be enforced. The Government further argues that even assuming that Jimenez-Moreno had not waived his right to pursue relief under § 2255, he nevertheless is not entitled relief, because his ineffectiveness of counsel claim is without merit. (Document No. 71). This § 2255 proceeding is ripe for ruling.

## II. Discussion

### A. Wavier

A defendant's waiver of his statutory right to collaterally challenge his conviction with a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, like a waiver by a defendant of his right to appeal, is generally enforceable if the waiver is both knowing and voluntary. *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994) (Enforcing defendant's voluntary and knowing waiver of § 2255); *United States v. McKinney,* 406 F.3d 744, 746-47 & n.5 (5th Cir. 2005) (Enforcing, post-*Booker*, a waiver of appeal right that was signed prior to the issuance of *Booker)*. Such waivers, however, do not "preclude review of a sentence that exceeds the statutory maximum." *United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004). In the context of a plea agreement waiver, a sentence exceeds the statutory maximum only when it exceeds the maximum allowed by statute. *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005); *United States v. Cortez*, 413 F.3d 502, 503 (5th Cir.), *cert. denied*, 126 S.Ct. 502 (2005). In addition, when a defendant alleges that his counsel was ineffective in negotiating a plea agreement, such ineffectiveness claims are not barred by the waiver. *See United States v. White,* 307 F.3d 336, 343 (5th Cir. 2002) ("[i]neffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself."); *United States v. Cockerham,* 237 F.3d 1179, 1187 (10th Cir. 2001) ("[W]e hold that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver. Collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable."), *cert. denied*, 534 U.S. 1085 (2002); *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea

11

agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel."); *Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir. 2000) (where the ineffectiveness claims raised in a § 2255 motion relate to counsel's performance at sentencing, the defendant's plea agreement waiver of this right to challenge his conviction in a § 2255 proceeding is enforceable), *cert. denied*, 531 U.S. 1175 (2001).[3] Ineffective assistance of counsel claims, including challenges to counsel's performance at sentencing, which do not relate to the validity of the Plea Agreement and waiver, can be waived. *White,* 307 F.3d at 343. Otherwise, "[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about the process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded." *White,* 307 F.3d at 344.

Here, pursuant to a written Plea Agreement, Jimenez-Moreno waived his right to appeal and waived his right to collaterally attack his plea, conviction and sentence. As discussed above, the written Plea Agreement was explicit with respect to the waiver of the right to appeal and to pursue collateral relief. (Document No. 32, ¶ 9-12).

---

[3] There are some other limited situations in which a plea agreement waiver of the right to seek collateral review under § 2255 is not enforceable, such as where the sentence imposed violates the terms of the plea agreement, the sentence is illegal, or the Government has suppressed exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). *See DeRoo*, 223 F.3d at 923 ("defendants cannot waive their right to appeal an illegal sentence or a sentence imposed in violation of the terms of an agreement"); *United States v. Baramdyka,* 95 F.3d 840, 843 (9th Cir. 1996) ("the waiver of a right to appeal may be subject to certain exceptions such as claims involving a breach of the plea agreement, racial disparity in sentencing among codefendants or an illegal sentence imposed in excess of a maximum statutory penalty"), *cert. denied,* 520 U.S. 1132 (1997); *United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004) (Waiver does not preclude review of a sentence that exceeds the statutory maximum). None of those circumstances is at issue in this proceeding.

In addition, at his Rearraignment on January 27, 2006, the Court engaged in an extended colloquy to ensure that Jimenez-Moreno was competent to participate in the Rearraignment proceedings, had read the written Plea Agreement, discussed the contents of the written Plea Agreement with counsel and understood the agreement, that no promises had been made to induce his plea, that he understood the offense to which he was pleading guilty, the maximum sentence he faced, the rights he was giving up by virtue of his guilty plea, and the factual basis of the charges and his guilty plea. The Court also advised Jimenez-Moreno about the waiver provisions. Based on Jimenez-Moreno's responses during the lengthy colloquy, Judge Harmon concluded that Jimenez-Moreno's guilty plea and waiver of his right to appeal and collaterally attack his conviction and/or sentence was knowing and voluntary.

Given Jimenez-Moreno's statements on the record, which carry a strong presumption of verity, *Blackledge v. Allison,* 431 U.S. 63, 74 (1977), that he had read and discussed the written Plea Agreement with his counsel, that he understood the statutory and constitutional rights which he was waiving, that he understood his possible range of punishment and how his sentence would be computed, and that he understood that he had waived his right to appeal and to file a post conviction proceeding, Jimenez-Moreno has not shown that his plea was not counseled, knowing and voluntary. Thus, upon this record, Jimenez-Moreno's plea agreement waiver of his right to collaterally attack his conviction with a § 2255 motion is enforceable. Jimenez-Moreno's sentence does not exceed the statutory maximum – that is, the maximum sentence allowed by statute, *see* 18 U.S.C. § 2252A(a)(5)(B) (maximum term of life), and does not constitute an upward departure from the Sentencing Guidelines. *See United States v. McKinney*, 406 F.3d 744, 746-47 (5th Cir. 2005). Moreover, Jimenez-Moreno's ineffective assistance of counsel claim relates to counsel's performance

at sentencing, and does not relate to the validity of the Plea Agreement and waiver, and therefore are covered by waiver.  Because Jimenez-Moreno's plea agreement, and waiver of appeal and collateral rights contained therein, were knowingly, voluntarily, and intelligently entered, because Jimenez-Moreno has waived his right to bring a § 2255 motion, and because that waiver is valid and should be enforced, it serves as a bar to the instant § 2255 motion, *e.g.*, *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000); *Davila*, 258 F.3d at 451-52; *United States v. Nguyen*, 2005 WL 14090 (E.D. La. 2005); *Morua v. United States*, 2005 WL 1745474 (S.D.Tex. 2005) (Hittner, J.); *United States v. Rohmfeld*, 2006 WL 126636 (S.D.Tex. 2006) (Jack, J.), and this § 2255 proceeding is subject to dismissal.

### B. Merits

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had.  *Strickland*, 466 U.S. at 687.  Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable.  *Id.* at 687-88.  The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable.  *Id.* at 694-95.  Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief.  The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong.  *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and

that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

      Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). The court's role "under § 2255 is not to audit decisions that are within the bounds of professional prudence." *United States v. Molina-Uribe*, 429 F.3d. 514, 518 (5th Cir. 2005), *cert. denied*, (2006). In addition, conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200

F.3d 274, 281 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, Jimenez-Moreno "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* As to the specific example of counsel's assistance, which Jimenez-Moreno cites to in support of ineffectiveness claim, such as that counsel should have argued for a downward departure based on his immigration status, the record either affirmatively shows that Jimenez-Moreno's counsel was not deficient or there is no evidence that the alleged error prejudiced Jimenez-Moreno within the meaning of *Strickland.*

Here, the record shows that Jimenez-Moreno's counsel was not deficient for failing to request a downward departure based on his status as a deportable alien. Even assuming that counsel had made such a request, it would not have been granted since Jimenez-Moreno's status as a deportable alien was the only ground for such a request. In *United States v. Garay*, 235 F.3d 230, 232-22 & n.8 (5th Cir. 2000), the Fifth Circuit Court of Appeals observed that even though the sentencing guidelines provide for a downward departure on the ground that the defendant is a deportable alien, such downward departures are proper only in an extraordinary case, which are "highly infrequent." *See United States v. Foote*, 2001 WL 671465, *3-*4 (N.D.Tex. 2001) (rejecting argument by § 2255 movant that his counsel should have moved for downward departure). Here, other than the fact that Jimenez-Moreno was a deportable alien, he has not shown that this was an extraordinary case which would have warranted a downward departure under *Garay,* and as such, he has not shown he was

prejudiced by counsel's failure to move for a downward departure based on his status as a deportable alien. In conclusion, Jimenez-Moreno has offered no proof as to how his counsel's performance was objectively deficient, or proof that such deficient performance prejudiced him in any way. Therefore, no relief is available under § 2255 on the ineffective assistance of counsel claim.

## IV. Conclusion and Recommendation

Based on the foregoing, and the conclusion that Jimenez-Moreno's guilty plea was knowing and voluntary and that his waiver of his right to collaterally attack his conviction should be enforced, and given that no relief is available to Jimenez-Moreno on his claim of ineffective assistance of counsel, in any event it is

RECOMMENDED that the Government's Motion to Dismiss (Document No. 71) be GRANTED, that Movant Jimenez-Moreno's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 69) be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile*

*Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 22nd day of July, 2008.

/s/ Frances H. Stacy
Frances H. Stacy
United States Magistrate Judge